Randall Scott Luskey (SBN: 240915)
rluskey@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street. 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

*Additional Counsel Listed on Following Page*

*Attorneys for Defendants*
*Coinbase, Inc., Coinbase Global, Inc. and Brian Armstrong*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JOEL HEABEART, *et al.*, | Case No. 3:25-cv-04473-JD |
| *Plaintiffs*, | Private Securities Litigation Reform Act |
| vs. | **DEFENDANTS COINBASE, INC., COINBASE GLOBAL, INC. AND BRIAN ARMSTRONG'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| COINBASE, INC., *et al.*, | |
| *Defendant*s. | |
| | Date: October 30, 2025 |
| | Time: 10:00 AM |
| | Judge: Hon. James Donato |

Paul D. Brachman (admitted *pro hac vice*)
pbrachman@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7440
Facsimile: (202) 379-4098

Kristina A. Bunting (admitted *pro hac vice*)
Michael J. Pisem (admitted *pro hac vice*)
kbunting@paulweiss.com
mpisem@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

1

<b><u>TABLE OF CONTENTS</u></b>

2
<b>Page</b>

3   I.     STATEMENT OF ISSUES TO BE DECIDED    - 1 -

4   II.    INTRODUCTION    - 1 -

5   III.   ALLEGATIONS IN THE AMENDED COMPLAINT    - 3 -

6       A.    The User Agreement Explained the Risks of Trading in Digital Assets.   - 4 -

7       B.    The Terra Collapse and Suspension in Trading of WLUNA.   - 5 -

8   IV.   LEGAL STANDARD    - 5 -

9   V.    ARGUMENT    - 6 -

10         1.    The AC Fails to Allege Securities Fraud. ................................................- 6 -

11            A.    Plaintiff's Section 10(b) Claims Are Time Barred. .....................- 6 -

12            B.    The AC Fails to Plead Actionable Misstatements........................- 8 -

13            C.    The Complaint Fails to Plead a Strong Inference of Scienter....- 10 -

14            D.    Plaintiffs Fail to Allege Reliance on Coinbase's Statements.....- 12 -

15            E.    Plaintiffs Fail to Plead that Coinbase's Misrepresentations

16                 Caused Their Losses. ..................................................................- 14 -

         2.    Plaintiffs Fail to Allege a Violation of Section 20(a) (Count II). ..........- 15 -

17         3.    All Claims Against Coinbase Global, Inc. Should Be Dismissed .........- 15 -

18   VI.   CONCLUSION    - 15 -

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Buffin* v. *Community.com, Inc.*,
5
    2021 WL 3376934 (C.D. Cal. Jan. 19, 2021) ....................................................................... 13

6

*Bull* v. *Chandler*,
    1992 WL 103686 (N.D. Cal. Mar. 12, 1992) ....................................................................... 10
7

8

*Capital Mgmt., LP* v. *Magistri*,
    549 F.3d 736 (9th Cir. 2008) ............................................................................................... 11

9

*Curry* v. *Yelp Inc.*,
10
    875 F.3d 1219 (9th Cir. 2017) ............................................................................................. 11

11

*Dura Pharms., Inc.* v. *Broudo*,
    544 U.S. 336 (2005) ............................................................................................................ 14
12

13

*Ferraro Fam. Found., Inc.* v. *Corcept Therapeutics Inc.*,
    501 F. Supp. 3d 735 (N.D. Cal. 2020) ................................................................................ 14

14

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
15
    97 F.4th 1171 (9th Cir. 2024) ............................................................................................... 6

16

*Genna* v. *Digital Link Corp.*,
    25 F. Supp. 2d 1032 (N.D. Cal. 1997) ................................................................................. 8
17

18

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ...................................................................................................... 12, 13

19

*Johnson* v. *Kinney*,
20
    2022 WL 959825 (S.D. Cal. Mar. 30, 2022) ........................................................................ 4

21

*Kelley* v. *Rambus, Inc.*,
    2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ..................................................................... 13
22

23

*Lipton* v. *Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) ............................................................................................. 12

24

*Lloyd* v. *CVB Fin Corp.*,
25
    811 F.3d 1200 (9th Cir. 2016) ............................................................................................. 14

26

*In re Maxim Integrated Prods, Inc. Deriv. Litig.*,
    574 F. Supp. 2d 1046 (N.D. Cal. 2008) ............................................................................... 7
27

28

*In re Maxim Integrated Prods., Inc. Sec. Litig.*,
    639 F. Supp. 2d 1038 (N.D. Cal. 2009) ............................................................................. 15

*Merck & Co.* v. *Reynolds*,
    559 U.S. 633 (2010) ............................................................................................................. 7

*Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................................................ 6

*In re Netflix, Inc., Sec. Litig.*,
    964 F. Supp. 2d 1188 (N.D. Cal. 2013) ............................................................................ 15

*Nguyen* v. *Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ............................................................................................ 11

*In re Nvidia Corp. Sec. Litig.*,
    2010 WL 4117561 (N.D. Cal. Oct. 19, 2010) .................................................................. 14

*Oregon Pub. Emps. Ret. Fund* v. *Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ........................................................................................ 5, 11

*Pearl* v. *Coinbase Global, Inc.*,
    2024 WL 3416505 (N.D. Cal. July 15, 2024) ............................................................... 9, 15

*Prodanova* v. *H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ...................................................................................... 10, 11

*Sabbag* v. *Cinnamon*,
    2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) ................................................................... 7

*ScripsAmerica, Inc.* v. *Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ............................................................................ 12

*Sneed* v. *Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) ........................................................................................... 9

*Somerset Studios, LLC* v. *Sch. Specialty, Inc.*,
    2012 WL 13082018 (N.D. Cal. Jan. 25, 2012) ................................................................. 14

*In re Sona Nanotech, Inc. Sec. Litig.*,
    562 F. Supp. 3d 715 (C.D. Cal. 2021) ................................................................................ 8

*Timboe* v. *Clark*,
    2022 WL 991721 (N.D. Cal. Mar. 31, 2022) ..................................................................... 7

*In re Turbodyne Techs., Inc. Sec. Litig.*,
    2000 WL 33961193 (C.D. Cal. Mar. 15, 2000) ................................................................ 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2 F.4th 1199 (9th Cir. 2021) ............................................................................................. 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    328 F. Supp. 3d 963 (N.D. Cal. 2018) .............................................................................. 13

*In re Wagoner Funds, Inc. Sec. Litig.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) ............................................................. 13

*Weston Fam. P'ship LLP* v. *Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ................................................................................ 8

*Wolfson* v. *Bank of Am. Nat'l Ass'n*,
   2018 WL 6571180 (W.D. Wash. Dec. 13, 2018) ................................................ 15

*Xiaojiao Lu* v. *Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) .............................................................. 10

*York Cnty. on Behalf of York Ret. Fund* v. *HP, Inc.*,
   65 F. 4th 459 (9th Cir. 2023) ................................................................................ 7

*Zucco Partners, LLC* v. *Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................. 11, 12, 15

**Statutes**

15 U.S.C. § 77z-1 ....................................................................................... 1, 8, 10

15 U.S.C. § 78a .................................................................................................. 15

15 U.S.C. § 78j ................................................................................... 5, 6, 10, 15

15 U.S.C. § 78t .................................................................................................. 15

15 U.S.C. § 78u-4 ....................................................................................... 1, 6, 8, 10

28 U.S.C. § 1658(b) ............................................................................................ 7

**Other Authorities**

17 C.F.R. § 240.10b-5 ......................................................................................... 6

Fed. R. Civ. P. 9(b) ......................................................................................... 1, 6

Fed. R. Civ. P. 12(b) ........................................................................................... 1

Fed. R. Civ. P. 41(a) ........................................................................................... 3

Fed. R. Evid. 201 ............................................................................................... 4

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 30, 2025 at 10:00 AM or as soon thereafter as this matter may be heard, in the courtroom of the Honorable James Donato, Courtroom 11, 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Coinbase, Inc. ("Coinbase"), Coinbase Global, Inc. and Brian Armstrong (together "Defendants") will and hereby do move this Court to: (1) dismiss Counts I and II brought by Plaintiffs Joel Heabeart, Joel Miller, Dylan Michaud, Kyle Kelley, Justin Moran, María Cecilia Lucanera, Noel Yount, Israel Alatriz, Aaron Duncan, James Michael Smith, and Edward C. Toal (together, "Plaintiffs") in the Amended Complaint (Dkt. 16) (the "AC"); and (2) dismiss Coinbase Global, Inc. as to all claims in the AC (the "Motion").

Defendants make this Motion under Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declarations of Randall S. Luskey ("Luskey Decl.") and Aleksandar Totkov ("Totkov Decl.") and the exhibits attached thereto, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any other argument or evidence that may be received by the Court upon hearing of this Motion.

Dated:  September 22, 2025

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Randall S. Luskey*

Randall Scott Luskey
Paul D. Brachman (admitted *pro hac vice*)
Kristina A. Bunting (admitted *pro hac vice*)
Michael J. Pisem (admitted *pro hac vice*)

*Attorneys for Defendants Coinbase, Inc., Coinbase Global, Inc. and Brian Armstrong*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Should Counts I and II[1] of Plaintiffs' Amended Complaint (Dkt. 16) (the "AC") be dismissed with prejudice for failure to state a claim pursuant to the Private Securities Litigation Reform Act (the "PSLRA") and Federal Rules of Civil Procedure 9(b) and 12(b)?

2.    Should all claims against Coinbase Global, Inc. be dismissed because it is a legally distinct entity against which no specific misconduct is alleged?

### II.    INTRODUCTION

Plaintiffs are purchasers of WLUNA, a digital asset created by a non-party, Terraform Labs. AC ¶¶ 6–17, 30–31.  Plaintiffs suffered losses when Terraform's digital asset ecosystem collapsed, resulting in a crash in the market value of WLUNA.  Instead of suing Terraform Labs, Plaintiffs are seeking to recover their losses from Coinbase, Inc. ("Coinbase")—the cryptocurrency exchange platform on which they purchased WLUNA—as well as Coinbase's parent company and CEO, by claiming that they somehow defrauded them.  Specifically, Plaintiffs allege that Defendants are liable for securities fraud because they misled Plaintiffs into believing that WLUNA was immovably pegged to LUNA and that any suspension in trading on Coinbase's platform would be temporary, and because Defendants purportedly provided certain Plaintiffs with inaccurate tax and accounting documentation.  Not only are these claims time-barred, but under the PSLRA and Federal Rule of Civil Procedure 9(b), there is a uniquely high and demanding pleading standard for such claims.  Plaintiffs fall well short of meeting this demanding standard because they fail to plead any particularized facts supporting their claims, including any specific statements made by Defendants or any actual facts showing any intention to defraud investors.  The Court should dismiss this case with prejudice for the following reasons:

---

[1]    Defendants are simultaneously moving to enforce the forum selection clause in the 2025 Coinbase User Agreement and compel arbitration of all other causes of action in the AC, which must be submitted to arbitration.  *See* Totkov Decl., Ex. 15 at § 9.10 (forum selection clause), Appendix 5, § 5 (requiring securities law claims be judicially resolved).  To be clear, Defendants believe all claims in the AC are entirely without merit and should be dismissed.  In the event Defendants' motion to compel arbitration is denied in any part, Defendants will move to dismiss all claims.

*First*, Plaintiffs' securities law claims are barred by the statute of limitations, which expired one year before Plaintiffs filed this action, requiring dismissal of the claims at the threshold.

*Second*, Plaintiffs fail to identify the "who, what, when and how" of the alleged misrepresentations—making it impossible for the Court to assess their falsity. Although Plaintiffs claim that "Coinbase misrepresented WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token," AC ¶ 49, Plaintiffs do not identify where, when, or how any Defendant made this purported misrepresentation and the context shows that Plaintiffs' claims are false. At most, Coinbase's website represented that "1 LUNA can be exchanged for 1 WLUNA" and that WLUNA was "*designed* to track LUNA's value" but never guaranteed this exchange rate. Luskey Decl., Ex. 1. And despite Plaintiffs' claim that "Coinbase described the suspension of WLUNA trading as temporary," *id.* at ¶ 49, Plaintiffs have not specified how or when this statement was made, and they cannot do so, because to Defendants' knowledge, it never made any such statement. Rather, Coinbase's website stated on May 27, 2022 that it had "suspended trading in WLUNA" on May 27, 2022, Luskey Decl., Ex. 2, but made no reference to the length of time that trading would be suspended. And while Plaintiffs plead that "Coinbase's account statements and tax documentation provided to Plaintiffs were materially inaccurate," AC ¶ 49, they do not allege facts showing *how* any statements or documents were false or if they were actually misleading. Because Plaintiffs fail to identify the alleged misrepresentations or explain how any statements misled investors, Plaintiffs' claims fail.

*Third*, Plaintiffs have failed to plead any particularized facts showing that Defendants intended to deceive investors or were deliberately reckless as to the falsity of their statements. The AC vaguely pleads only that "Coinbase maintained a close and conflicted relationship with Terraform Labs," AC ¶ 2, and "had direct and privileged access to non-public information regarding Terra's blockchain development, market strategies, and potential vulnerabilities," and "held substantial positions in Terra assets," *id.* at ¶ 33, but Plaintiffs do not plead what, if any, information was shared between Terraform and Defendants, or when, why and how such information was shared, or when, why and how senior management (or Defendant Armstrong specifically) became apprised of any information undermining any alleged misstatement. Therefore, these allegations

fail to raise any inference of scienter, let alone a strong inference that outweighs any non-culpable inference.

*Fourth*, the AC itself contradicts any claim Plaintiffs reasonably and directly relied on Defendants' alleged misstatements and were misled. Plaintiffs *cannot* have relied on alleged misstatements regarding the suspension of WLUNA trading, because the AC does not allege any Plaintiff purchased or sold WLUNA after Coinbase announced the trading suspension on May 27, 2022. Similarly, allegations that Coinbase's "account statements and tax documentation" were wrong, even if misstatements, by the AC's own allegations did not mislead, because on their face they "falsely indicated ***an impossible*** acquisition cost of approximately $76 million in WLUNA tokens." *Id.* at ¶ 39 (emphasis added).

*Fifth*, Plaintiffs fail to plead loss causation. Any losses Plaintiffs suffered were caused by the collapse of the Terraform ecosystem and resulting crash in the market price of WLUNA—not any conduct by Defendants. Plaintiffs admit that "the Terra blockchain ecosystem experienced a rapid and catastrophic collapse" in May 2022, leading to "a near-total crash in the market value of Terra's native cryptocurrency, LUNA, and consequently, its Ethereum-wrapped counterpart, WLUNA." AC ¶ 34. Yet Plaintiffs fail to explain how Defendants' alleged misrepresentations, rather than the Terra collapse, resulted in their alleged losses.

*Sixth*, all claims against Coinbase Global, Inc.[2] should be dismissed. There are no properly pleaded claims against Coinbase Global in the AC; it is a distinct legal entity from Coinbase, it does not provide any of the trading services at issue here, and Plaintiffs never allege that they transacted with it.[3]

## III.    ALLEGATIONS IN THE AMENDED COMPLAINT

The AC concerns WLUNA, a digital asset created by a third party, Terraform Labs. *Id.* at

---

[2]    Coinbase Global, Inc. is the parent company of wholly owned subsidiary Coinbase, Inc. Any descriptions of Coinbase's business or services herein refer to Coinbase, Inc., not Coinbase Global, Inc.

[3]    Today, Plaintiffs' counsel filed a motion to dismiss Plaintiff Myburgh from the case. *See* Dkt. 51. Thus, Defendants' motion to dismiss does not address the deficiencies in Plaintiff Myburgh's claims.

¶¶ 30–31.  Terraform developed a cryptocurrency ecosystem, including a native cryptocurrency called LUNA.  *Id.* at ¶ 30.  Because LUNA was not compatible with other blockchains, Terraform Labs allegedly introduced "Wrapped LUNA," or WLUNA, which "bridged" LUNA to the Ethereum blockchain, creating the ability to trade the digital asset on other systems, including on Coinbase's exchange.  *Id.* at ¶ 31.  Plaintiffs (other than Plaintiff Michaud, who does not allege any WLUNA purchases or sales at all, *id.* at ¶ 15, and should be dismissed on that basis alone) allege that they each purchased WLUNA tokens through Coinbase's platform at unspecified dates prior to May 27, 2022.  *Id.* at ¶¶ 6–17.  Plaintiffs' securities law claims specifically rely on three alleged misstatements:

> a. Coinbase described the suspension of WLUNA trading as temporary, misleading investors into believing the token's trading and conversion functionalities would resume, despite Coinbase's internal knowledge that it would not restore trading or properly process conversions.  b. Coinbase misrepresented WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token.  After the collapse, Coinbase failed to honor or accurately implement this peg, rendering its prior assurances materially false.  c. Coinbase's account statements and tax documentation provided to Plaintiffs were materially inaccurate, generated from internal systems distinct from blockchain-ledger records, further misleading investors regarding their holdings and transaction histories.  *Id.* at ¶ 49.

### A.    The User Agreement Explained the Risks of Trading in Digital Assets.

Coinbase regulates its relationship with customers through the Coinbase User Agreement (the "User Agreement").[4]  There is no dispute that Plaintiffs agreed to the User Agreement in order to access Coinbase's platform, and that the agreement governed their use of the Coinbase exchange.  *See* AC ¶ 69 ("Plaintiffs and Coinbase, Inc. entered into a valid, enforceable contract, the… Coinbase's User Agreement.");  Totkov Decl., Ex. 15 at Preamble.  Plaintiffs certified that, by signing up for an account, they "read, underst[ood], and accept[ed] all of the terms and conditions contained" in the User Agreement.  *Id*. at Ex. 14 at Preamble (2022 User Agreement, same).

In contrast to the AC's allegations of misrepresentations regarding the WLUNA peg or its stability, the User Agreement expressly warned Plaintiffs that "underlying software protocols

---

[4]    As explained in the concurrently filed Request for Judicial Notice, the Court should consider these exhibits under Fed. R. Evid. 201 and/or the incorporation by reference doctrine.  *Johnson* v. *Kinney*, 2022 WL 959825, at *3 (S.D. Cal. Mar. 30, 2022) (court "need not accept as true allegations that contradict judicially noticed facts" on motion to dismiss).

which govern the operation of Digital Assets," such as WLUNA, "may be subject to sudden changes in operating rules [that] may materially affect the availability, value, functionality, and/or the name of the Digital Asset."  Totkov Decl., Ex. 15 at § 2.6.  The User Agreement further cautioned that "such changes are outside of Coinbase's control" and that "Coinbase's response to any operating change is subject to its sole discretion and may include deciding not to support any new Digital Asset[.]"  *Id.*  And, indeed, Plaintiffs expressly agreed in the User Agreement to "***acknowledge and accept the risks of operating changes to Digital Asset protocols***" and that "***Coinbase is not responsible for such operating changes and not liable for any loss of value you may experience as a result***[.]"  *Id.* (emphasis in original).

## B.    The Terra Collapse and Suspension in Trading of WLUNA.

Plaintiffs allege that "[i]n early May 2022, the Terra blockchain ecosystem experienced a rapid and catastrophic collapse, triggered by severe instability in its primary algorithmic stablecoin, UST."  AC ¶ 34.  This directly resulted in a crash in the market value of LUNA, and, in turn, WLUNA.  *Id.*  Coinbase ultimately suspended trading of WLUNA on the Coinbase platform on May 27, 2022.  *Id.* at ¶ 35.  To the extent that the AC specifies when certain Plaintiffs purchased WLUNA (it does not for many of them), every purchase was prior to this suspension.  *See id.* at ¶¶ 12 (Moran "invested in WLUNA during May 2022"); 16 (Miller "invested in WLUNA in April and May 2022"); 11, 13, 14 (Smith, Duncan, and Heabeart made purchases prior to May 27, 2022).  Despite the "volatility involving Terra ecosystem assets," holders of WLUNA maintained the ability to "store, send, and receive WLUNA."  Luskey Decl., Ex. 2 (Screenshot of 2022 WLUNA page as of June 2, 2022).[5]

## IV.    LEGAL STANDARD

Plaintiffs' Section 10(b) claims must "allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation."  *Oregon Pub. Emps. Ret.*

---

[5]    The AC, through its use of quotations, suggests the use of the word "temporarily" comes from a Coinbase communication.  AC ¶ 35.  But the AC fails to plead that Coinbase ever used this word in connection with WLUNA or communicated such a limited intention.

*Fund* v. *Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014) (citing *Stoneridge Inv. Partners, LLC* v. *Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).  Plaintiffs must plead fraud with particularity under Fed. R. Civ. P. 9(b) and satisfy the PSLRA's heightened pleading standards for ***each element***. 15 U.S.C. § 78u-4(b)(1) (emphasis added); *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1181 (9th Cir. 2024) ("[T]he complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading.…These heightened standards apply to all elements of a securities fraud action." (cleaned up)).  The heightened pleading standard "prevents a plaintiff from skirting dismissal" in exactly this situation:  where the AC makes "vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful."  *Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

**V.    ARGUMENT**

      1.    **The AC Fails to Allege Securities Fraud.[6]**

      The securities law claims fail for a number of independent reasons, each warranting dismissal: (1) The claims are barred by the statute of limitations, which expired approximately a year before this action was filed; (2) Plaintiffs have not identified any false or misleading statements made by Defendants or how any statements on which Plaintiffs potentially rely are misleading; (3) Plaintiffs fail to plead any facts showing Defendants acted intentionally or recklessly to defraud purchasers; (4) Plaintiffs do not plead that they justifiably relied on any of Coinbase's alleged statements; and (5) Plaintiffs do not sufficiently allege loss causation, particularly given that Plaintiffs' losses were directly caused by the Terra collapse—a factor entirely outside of Defendants' control.

      *A.    Plaintiff's Section 10(b) Claims Are Time Barred.*

      Plaintiffs' Section 10(b)/Rule 10b-5 claims must be dismissed because, on the face of the AC, Plaintiffs discovered the facts giving rise to these claims around May 2022, but only asserted

---

[6]    Coinbase does not and has never conceded that WLUNA transactions on its platform constituted securities transactions.  They were not.  While the AC should be dismissed with prejudice for the reasons set forth in this Motion, Coinbase reserves the right to make future arguments on this ground, and others as appropriate.

their claims in May 2025—a year after the statute of limitations expired.  A 10(b) claim must be brought "not later than…2 years after the discovery of the facts constituting the violation."  28 U.S.C. § 1658(b); *Merck & Co.* v. *Reynolds*, 559 U.S. 633, 638 (2010); *York Cnty. on Behalf of York Ret. Fund* v. *HP, Inc.*, 65 F. 4th 459, 464 (9th Cir. 2023).  "Discovery of the facts constituting the violation occurs not only once a plaintiff actually discovers the facts, but also when a hypothetical reasonably diligent plaintiff would have discovered them." *Sabbag* v. *Cinnamon*, 2010 WL 8470477, at *2 (N.D. Cal. Dec. 10, 2010) (quoting *Merck*, 559 U.S. at 644) (cleaned up).

On the face of the AC, the series of events that gave rise to Plaintiffs' claims occurred on or around May 27, 2022.  Plaintiffs do not point to any facts "constituting the violation" that they discovered—or a diligent plaintiff would have discovered—after May 2022.  Specifically, the AC alleges that, to the extent each Plaintiff actually purchased WLUNA on Coinbase, Plaintiffs made these purchases on various unspecified dates prior to or during May 2022.  AC ¶¶ 6–17.  The AC also alleges that the Terra ecosystem collapsed "[i]n early May 2022," and that "[a]s a result of this collapse, retail investors holding WLUNA faced significant financial losses."  AC ¶ 34.  The AC next alleges that, on May 27, 2022, following the collapse, "Coinbase announced via public statements…that trading in WLUNA would be 'temporarily' suspended due to market conditions." AC ¶ 35.  The allegations thus make clear that Plaintiffs "knew, or through the exercise of reasonable diligence should have known, 'the facts constituting the violation'" by May 2022 and therefore Plaintiffs' claims are time-barred.  *Merck*, 559 at 642–43.

Plaintiffs allege that Defendants "prolong[ed] [the] suspension of WLUNA trading," "alter[ed] the displayed asset name" of WLUNA, and "provided false, misleading, and incomplete communications to investors regarding the status of WLUNA" on an unspecified date.  *See* AC ¶¶ 36–38, 49.  But these undated allegations are not sufficient to prevent dismissal on statute of limitations grounds.  First, on any reasonable reading of the AC, all these allegations must have taken place before May 2023, and are therefore still outside the statute of limitations.  Second, where, as here, "the expiration of the applicable statute of limitations is apparent from the face of the complaint," *In re Maxim Integrated Prods, Inc. Deriv. Litig.*, 574 F. Supp. 2d 1046, 1070 (N.D. Cal. 2008), Plaintiffs' additional undated claims are not sufficient to prevent dismissal.  *See Timboe*

v. *Clark*, 2022 WL 991721, at *6 (N.D. Cal. Mar. 31, 2022) (dismissing securities claim as time-barred where plaintiff "has not pleaded the manner in which he discovered the alleged fraud, so it is not possible to effectively analyze the timeliness of his claims"). Accordingly, Plaintiffs' first (and, as explained below, second) cause of action is barred by the statute of limitations.

       B.      *The AC Fails to Plead Actionable Misstatements.*

      To plead falsity, Plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Weston Fam. P'ship LLP* v. *Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) (citation omitted). Under the PSLRA, plaintiffs must "specify each statement alleged to have been misleading, [and] the reason or reasons why [it] is misleading[.]" 15 U.S.C. § 78u-4(b)(1)(B). "[B]road and conclusory allegations" that "do not show with any specificity that defendants' statements were false and misleading at the time they were made" should be dismissed. *Genna* v. *Digital Link Corp.*, 25 F. Supp. 2d 1032, 1043 (N.D. Cal. 1997) (dismissing 10b-5 claims where complaint "fail[ed] to identify any specific statements or facts" showing how statements were false). Here, the AC is devoid of any context, detail, or even source of the false or misleading statements in question, and lacks any explanation of how any representation by Defendants was misleading. None of the alleged misrepresentations meet the demanding pleading standards of the PSLRA, warranting dismissal. *See, e.g.*, *In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 724 (C.D. Cal. 2021) (dismissing 10b-5 claims where plaintiffs "fail[ed] to *specifically* allege why each statement constitutes a misrepresentation" (emphasis in original)). Moreover, Plaintiffs' claim fails for the independent reason that Defendants' representations regarding WLUNA were not misleading in "the context surrounding the statements." *Weston Fam. P'ship LLLP* v. *Twitter, Inc.*, 29 F. 4th 611, 622 (9th Cir. 2022). Specifically:

      ***Peg.*** Plaintiffs claim that Defendants "misrepresented WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token," AC ¶ 49, but the AC fails to identify when or how that statement was made, falling short of the PSLRA heightened pleading standard. To the extent that the AC means to refer to what Coinbase's website *actually* stated at the time, those statements were not misleading in context. As the Ninth Circuit recently pronounced, "[c]ontext matters because we presume that a reasonable investor—who has money on the line—acts with

care and seeks out relevant information" and therefore "cares about a statement's surrounding text, including hedges, disclaimers, and apparently conflicting information." *Sneed* v. *Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025). Coinbase's website said the following: "Wrapped Luna (WLUNA) is an Ethereum token that's **intended** to represent Terra (LUNA) on the Ethereum blockchain. It is not LUNA, but rather a separate ERC-20 token that's designed to track LUNA's value.…Through a WLUNA partner, 1 LUNA can be exchanged for 1 WLUNA, and vice-versa." Luskey Decl., Ex. 1 (archived copy of WLUNA Coinbase page as of May 23, 2022) (emphasis added). Those statements did not "misrepresent[] WLUNA as consistently maintaining a 1:1 immutable peg with the Terra LUNA token," as the AC claims, but instead accurately represented the process by which LUNA could be exchanged for WLUNA at the time, and there is no mention of the peg being "immutable." In another case focused on a related digital asset in the Terra-Luna ecosystem, the Court rejected similar claims that Coinbase misled purchasers regarding the maintenance of a peg or the stability of the price of an asset. *See Pearl* v. *Coinbase Global, Inc.*, 2024 WL 3416505, at *3 (N.D. Cal. July 15, 2024) (rejecting claim that Coinbase misrepresented nature and stability of UST based on plain language and context of representations). Nor are Plaintiffs' claims reasonable inferences in light of additional disclosures by Coinbase that "the underlying software protocols which govern the operation of Digital Assets…may be subject to sudden changes in operating rules" that "are outside of Coinbase's control" and "may materially affect the availability, value, functionality, and/or the name of the Digital Assets." Totkov Decl., Ex. 15 § 2.6. Further, if Plaintiffs' complaint is an alleged "systematic failure to correctly process the immutable smart contract peg to the new LUNA token," AC ¶ 22, which was launched by Terraform after the suspension on May 27, *see id.* at ¶ 14, that allegation is also woefully short of an actionable misrepresentation. No statement by Defendants is cited at all, and how Defendants' statements prior to the Terra-Luna collapse pertained to the ecosystem relaunched by Terraform after the collapse is entirely unexplained.

**Trading Suspension.** Although Plaintiffs allege that Defendants "explicitly labeled the May 27, 2022, trading suspension as temporary," AC ¶ 48, Plaintiffs have not identified a statement by Defendants labeling the suspension as "temporary." In fact, Coinbase stated that "Coinbase has

suspended trading in WLUNA on May 27, 2022," making no mention of the suspension being temporary.  Luskey Decl., Ex. 2 (Screenshot of June 2, 2022 WLUNA page).  To the extent that Plaintiffs claim that *this* statement was somehow false or misleading, no reasonable investor could interpret Coinbase's announcement, which never uses the word temporary, as "explicitly label[ing] the May 27, 2022 trading suspension as temporary," as Plaintiffs claim in the AC.

**Tax and Account Statements**.  The AC alleges that "Coinbase issued materially inaccurate tax and account statements," with some "falsely indicat[ing] an impossible acquisition cost…contradicting blockchain leger entries."  AC ¶ 39.  Similarly, the AC argues that Defendants "falsely reported" Plaintiff Duncan's "holdings as worth less than $150."  *Id.* at ¶ 13.  However, these allegations do not detail where the inaccuracies or contradiction lay or how they are actionably misleading.  Even taking as true the contention that Plaintiff Duncan's WLUNA holdings were previously reported as worth $757,928,713.65, *id.*, the claim does not allege how he could or would be misled by such an allegedly obviously false statement of his holdings.  *See Bull* v. *Chandler*, 1992 WL 103686, at *8 (N.D. Cal. Mar. 12, 1992) ("Section 10(b) cannot be violated by failure 'to disclose a result that is obvious even to a person with only an elementary understanding of the stock market.'" (quoting *Vaughn* v. *Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980)).

In sum, Plaintiffs fail to provide sufficient detail or context to show that Defendant's statements were false, material, or actionable, instead impermissibly asking the Court to supply detail lacking in the Complaint and ignore the heightened pleading standards.  *See Xiaojiao Lu* v. *Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1278 (N.D. Cal. 2019) (dismissing claim for failing to "connect the content of the communications with specific factual allegations.").

C.     *The Complaint Fails to Plead a Strong Inference of Scienter*

Plaintiff also does not "state with particularity facts giving rise to a strong inference" of scienter as required by the PSLRA, which is an independent basis for dismissal.  15 U.S.C. § 78u-4(b)(2)(A).  The PSLRA imposes an unusually high burden on plaintiffs to plead scienter: "a complaint…must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent."  *Prodanova* v. *H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (cleaned up).  Under the PSLRA, courts "must take into account plausible opposing

inferences," an inquiry that "is inherently comparative." *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (citing *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007)); *Nguyen* v. *Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (scienter pleading standard is "exacting" and "no small hurdle" (citation omitted)).  Plaintiffs also must "allege scienter with respect to each of the individual defendants." *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 607; *see Prodanova*, 993 F.3d at 1108 ("[B]ecause a corporation can only act through its employees and agents, it can only have scienter through them." (cleaned up)).

The AC is devoid of "compelling and particularized facts showing fraudulent intent or deliberate recklessness. *Prodanova*, 993 F.3d at 1108.  Instead, Plaintiffs repeatedly contend in a conclusory fashion that Defendants had an "intent to deceive" or a "reckless disregard for the truth," *e.g.*, AC ¶ 51, but fail to plead any facts showing that Mr. Armstrong (or other senior management) received any information internally or from Terraform apprising them that any account documentation or any representations as to the peg or trading suspension were false.  Plaintiff does not identify, for example, specific meetings, calls, or briefings where WLUNA or the Terra ecosystem was discussed.  This alone requires dismissal. *Curry* v. *Yelp Inc.*, 875 F.3d 1219, 1227 (9th Cir. 2017) (requiring "detailed and specific allegations about management's exposure to factual information" (citation omitted)).

The most that Plaintiffs can muster is to imply that through a close relationship with and investments in Terraform Labs, Defendants either had knowledge of the falsity of its statements or, at least, a motive to deceive or defraud Plaintiffs. *See, e.g.*, AC ¶ 50.  But Plaintiffs point to no particularized facts about this purported relationship and what information, if any, Terraform provided to Defendants and when, to whom it was provided, and whether it was relayed to any senior management of the Coinbase entities. *See Glazer* v. *Capital Mgmt., LP* v. *Magistri*, 549 F.3d 736, 745–46 (9th Cir. 2008) (affirming dismissal where no pleaded facts that individual defendant "was personally aware" of the undisclosed information).

In addition, Plaintiffs fail to identify any motive for Defendants to mislead, and the Ninth Circuit has held that "the lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter." *Prodanova*, 993 F.3d at 1108. The AC vaguely

alleges that Defendants "held substantial positions in Terra assets, placing it in an inherently conflicted position." AC ¶ 33. But Plaintiffs plead no facts regarding those "positions" or how they created "an inherently conflicted position," falling short of showing scienter. *See Lipton* v. *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("[R]outine business objectives, without more, cannot normally be alleged to be motivations for fraud.").

Instead, the AC suggests a far more compelling, and entirely non-culpable inference for Defendants' statements and actions: Coinbase did not restore WLUNA trading due to factors outside of its control and independent of any alleged fraud, specifically, the collapse of the entire Terra-Luna ecosystem. Indeed, Coinbase warned digital asset purchasers that its services may become degraded or unavailable during times of significant volatility or volume, Totkov Decl., Ex. 15 at § 1.4, and that "operating changes may materially affect the availability, value, functionality, and/or the name of Digital Assets in your Digital Asset Wallet or other wallet." *Id.* at § 2.6. These warnings are inconsistent with any intent to defraud. *See Zucco Partners*, 552 F.3d at 991 (holding that the court must "only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." (citation omitted)).

D.    *Plaintiffs Fail to Allege Reliance on Coinbase's Statements*

Plaintiffs fail to plead any particularized facts to support that they reasonably relied on the alleged misstatements, nor do they attempt to show that they are entitled to a presumption of reliance based on a fraud-on-the-market theory.[7] To invoke the presumption, a plaintiff must plead particularized facts showing, among other elements, "that the stock was traded in an efficient market." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) (citation omitted)*; ScripsAmerica, Inc.* v. *Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1253 n.129 (C.D. Cal. 2015) (plaintiffs must allege particularized facts showing market efficiency). Here, Plaintiffs fail to plead particularized facts showing that WLUNA was traded in an efficient market—the AC does not

---

[7]    Nor do Plaintiffs earn the *Affiliated Ute* presumption applicable to omissions because they allege reliance primarily on affirmative misrepresentations. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1208 (9th Cir. 2021) (*Affiliated Ute* "presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions" (citation omitted)).

contain any particularized factual allegations that WLUNA was "*actively traded*" and "traded on *well-developed* markets," requiring dismissal. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 328 F. Supp. 3d 963, 970 (N.D. Cal. 2018) (emphasis in original); *see also In re Turbodyne Techs., Inc. Sec. Litig.*, 2000 WL 33961193, at *14 (C.D. Cal. Mar. 15, 2000) (granting motion to dismiss where plaintiffs "have not alleged reliance under a fraud-on-the-market theory with sufficient particularity").

Absent the presumption of reliance, Plaintiffs must plead reasonable and direct reliance on the alleged misstatements. *Halliburton*, 573 U.S. at 269. The AC conclusorily asserts that Plaintiffs "justifiably relied on Coinbase's representations or assurances when deciding to hold or purchase WLUNA." AC ¶¶ 52, 97. But this is insufficient; Plaintiffs must show that they were "aware of a [defendant's] statement and engaged in a relevant transaction—*e.g.*, purchasing common stock— based on that specific misrepresentation." *Halliburton*, 573 U.S. at 267 (citation omitted). Crucially, the "relevant transaction" must be made *after* the alleged misrepresentation—"if the transaction takes place prior to the disclosures in question, reliance cannot be established." *Buffin* v. *Community.com, Inc.*, 2021 WL 3376934, at *6 (C.D. Cal. Jan. 19, 2021) (citation omitted). And the transaction must involve a purchase or sale; merely holding an asset cannot establish reliance, requiring dismissal of Plaintiffs' claims to the extent they allege that they decided to "hold" WLUNA in reliance on any representations. AC ¶¶ 52, 97; *Buffin*, 2021 WL 3376934, at *6 (rejecting "generic allegation that [plaintiff] relied by 'not tak[ing] action'" as "too conclusory to make out a viable reliance theory"). "Conclusory assertions of reliance are insufficient, and plaintiffs must plead facts probative of their actual reliance on any specific false statement." *Kelley* v. *Rambus, Inc.*, 2008 WL 5170598, at *14 (N.D. Cal. Dec. 9, 2008) (cleaned up).

The AC also fails to plead any facts showing **how** Plaintiffs relied on any alleged misrepresentation in making any specific purchase of WLUNA. The AC does not even allege that the Plaintiffs read or were aware of any specific misrepresentation, which is fatal. *In re Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) (no reliance absent allegations that plaintiff "read the annual reports or registration statements" that contained the alleged misrepresentations). Moreover, reliance is foreclosed on the face of the AC because it is devoid of

any allegation that Plaintiffs made even a single purchase or sale of WLUNA *after May 27, 2022*, when Coinbase's website announced the WLUNA trading suspension.  Nor are there any allegations of purchases or sales in reliance on the allegedly "false and misleading account records and tax documents."  AC ¶ 4.  While the complaint vaguely points to "financial and legal complications" as a result of the allegedly false documentation, AC ¶ 14, it never identifies a single purchase or sale made by any Plaintiff in reliance on those documents.  Finally, to the extent there were any inaccuracies in the account statements, any reliance was not reasonable on the face of the AC because, based on Plaintiffs' own allegations, it was obvious that the inaccuracies were errors.  AC ¶ 4 ("[T]ax documents indicated an impossibly high transaction value of approximately $76 million."); *Somerset Studios, LLC* v. *Sch. Specialty, Inc.*, 2012 WL 13082018, at *3 (N.D. Cal. Jan. 25, 2012) (no justifiable reliance where plaintiff "would have had to completely ignore the obvious").  Plaintiffs plainly do not adequately plead reliance.

> ### E.    Plaintiffs Fail to Plead that Coinbase's Misrepresentations Caused Their Losses.

Finally, Plaintiffs must plead with particularity loss causation or a "causal connection" between Defendants' alleged misrepresentations and Plaintiffs' losses.  *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 342 (2005).  Plaintiffs must demonstrate that their losses were "caused by [Defendants'] misrepresentations, rather than some other intervening event."  *Lloyd* v. *CVB Fin Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (citation omitted).  The AC fails to plead any particularized facts showing that the alleged misrepresentations caused Plaintiffs' losses; indeed, Plaintiffs' own pleading forecloses the argument that Defendants caused Plaintiffs' losses.  The AC acknowledges that it was the "rapid and catastrophic collapse" of the "Terra blockchain ecosystem…triggered by severe instability in its primary algorithmic stablecoin, UST" that *precipitated* the "near-total crash in the market value of…LUNA, and consequently,…WLUNA."  AC ¶ 34.  It was therefore this chain of events that caused Plaintiffs' losses, not the falsity of anything Defendants did or said.  Plaintiffs therefore fail to plead loss causation with particularity.  *See In re Nvidia Corp. Sec. Litig.*, 2010 WL 4117561, at *12 (N.D. Cal. Oct. 19, 2010) (plaintiffs failed to adequately plead loss causation where they did not address the "far more plausible reason for the resulting drop in…stock price" (citation omitted)); *Ferraro Fam. Found., Inc.* v. *Corcept*

*Therapeutics Inc.*, 501 F. Supp. 3d 735, 758 (N.D. Cal. 2020) (courts are "not required to accept a chain of inferences…unmoored from particularized allegations").

2.    **Plaintiffs Fail to Allege a Violation of Section 20(a) (Count II).**

Plaintiffs' Section 20(a) claim fails for two independent reasons: *first*, it is time barred for the same reasons as Plaintiffs' Section 10(b) claim,[8] and (2) Plaintiffs otherwise fail to allege a primary violation of Section 10(b) for the reasons described above. *Zucco Partners*, 552 F.3d at 990; *In re Netflix, Inc., Sec. Litig.,* 964 F. Supp. 2d 1188, 1199 (N.D. Cal. 2013) ("Absent an underlying violation of the Exchange Act, there can be no control person liability under Section 20(a)." (citation omitted)).  Accordingly, this claim must also be dismissed.

3.    **All Claims Against Coinbase Global, Inc. Should Be Dismissed**

Plaintiff asserts claims against two Coinbase entities, but Plaintiffs' claims arise solely from the provision of trading services—all of which were provided by Coinbase, Inc.  Totkov Decl., Ex. 15 at Preamble (agreement "governs your use of the services provided by Coinbase [Inc.]").  The AC merely asserts that Coinbase Global "was involved in, and had knowledge of, the misconduct described herein," AC ¶ 19, but pleads no facts to support this conclusion, or that the two legally separate entities should be conflated.  *Wolfson* v. *Bank of Am. Nat'l Ass'n*, 2018 WL 6571180, at *2 (W.D. Wash. Dec. 13, 2018) (dismissing claims against parent company where allegations were insufficient to pierce the corporate veil).  Because Plaintiff alleges no facts against Coinbase Global at all, all claims against Coinbase Global should be dismissed.  *See Pearl*, 2024 WL 3416505, at *9 (dismissing claims against Coinbase Global based on conclusory allegations that Coinbase and Coinbase Global "operate as a single company").

**VI.    CONCLUSION**

For the foregoing reasons, Counts I and II in the AC and all claims against Defendant Coinbase Global, Inc. should be dismissed with prejudice.

---

[8]    A Section 20(a) claim has the same statute of limitations as the underlying violation. *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1051 (N.D. Cal. 2009).  As described *supra* Section V.I.A., this period has lapsed, and therefore the Section 20(a) claim is also out of time.

1

2    Dated:  September 22, 2025                    PAUL, WEISS, RIFKIND, WHARTON &
                                                  GARRISON LLP

3

4                                                 */s/ Randall S. Luskey*
                                                  Randall Scott Luskey
5                                                 Paul D. Brachman (admitted *pro hac vice*)
                                                  Kristina A. Bunting (admitted *pro hac vice*)
6                                                 Michael J. Pisem (admitted *pro hac vice*)

7                                                 *Attorneys for Defendants Coinbase, Inc.,*
8                                                 *Coinbase Global, Inc. and Brian Armstrong*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28